**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MATTHEW DRAGOTTA** | ) | |
| **individually and on behalf of all others** | ) | |
| **similarly situated** | ) | **2:09-cv-627** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | |
| **WEST VIEW SAVINGS BANK** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER OF COURT**</u>

August 24, 2009

Presently before the Court is the MOTION TO DISMISS, with brief in support, filed by Defendant West View Savings Bank (Document Nos. 9 and 10), and PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, filed by Plaintiff Matthew Dragotta (Document No. 12).

**BACKGROUND**

On May 21, 2009, Plaintiff Matthew Dragotta ("Plaintiff") commenced this lawsuit by filing a Complaint (Doc. # 1) alleging Defendant failed to comply with the notification requirements of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.,* ("EFTA" or "the Act"), required before a bank can impose a transaction fee for a customer's use of an automated teller machine ("ATM").

Defendant West View Savings Bank has filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), in which it contends that the Complaint fails to state a claim for which relief can be granted under the decisions of the United States Supreme Court in *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, --U.S.--, 129 S. Ct. 1937 (2009). In the alternative, Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.

The issues have been fully briefed by the parties and the matter is ripe for disposition. After a careful consideration of the motion, the filings in support and opposition thereto, and the relevant case law, the Motion to Dismiss will be granted.

## STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure provides that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and " 'contemplates the statement of circumstances, occurrences, and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) (quoting 5 Wright & Miller, Federal Practice and Procedure § 1202, pp. 94, 95 (3d ed. 2004)).  "Each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d).

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the legal sufficiency of the complaint.  The court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the United States Supreme Court made clear in *Twombly*, the "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).  Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do." *Id.*

Recently, the United States Supreme Court reaffirmed *Twombly* in *Ashcroft v. Iqbal*, -- U.S.--, 129 S. Ct. 1937 (2009), and expressly extended the *Twombly* pleading standard to matters outside the realm of antitrust law.  When a complaint contains well-pled factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.  However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*  Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.

However, nothing in *Twombly* or *Iqbal* has changed other pleading standards for a Rule 12(b)(6) motion to dismiss.  The United States Supreme Court did not impose a new heightened pleading requirement, but reaffirmed that Rule 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief, not "detailed factual allegations." *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (*citing Twombly*, 550 U.S. at 555). Moreover, the United States Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips,* 515 F.3d at 231 (*citing Twombly*, 550 U.S. at 555-56, 563 n.8).

Generally, "to the extent that [a] court considers evidence beyond the complaint in deciding a 12(b)(6) motion, it is converted to a motion for summary judgment." *Anjelino v. New York Times Co.,* 200 F.3d 73, 88 (3d Cir. 1999);  *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993).  However, courts are permitted to consider matters of public record, exhibits attached to the complaint, and undisputably authentic documents

3

attached to the motion to dismiss without converting the motion to one for summary judgment. *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 (3d Cir. 2006).

## ANALYSIS

As the law requires, all disputed facts and inferences are resolved in favor of Plaintiff, the non-moving party.  The following background is drawn from the Complaint and the factual allegations therein are accepted as true for the purpose of this Opinion.  The facts underpinning Plaintiff's claim are straightforward and not contested.  On or about May 18, 2009, Plaintiff made an electronic fund transfer at Defendant's ATM machine located at 20531 Perry Highway in Cranberry Township, PA.  *See generally*, Complaint, Doc. # 1.  At the time of the transaction, Plaintiff did not maintain an account with Defendant.  *Id.*  Plaintiff was charged a "terminal owner fee" of $2.00 for the transaction.  At the time of the transaction, there was no notice posted "on or at" the Defendant's ATM to apprise consumers that a fee would be charged for the use of the ATM.  *Id.*

For its part, Defendant argues that, notwithstanding the facts as alleged by Plaintiff, it is not subject to liability under the Act as a result of its good faith compliance with the EFTA.  The issue before the Court is purely a question of law, to wit: does the Defendant's good faith compliance with the EFTA under the compliance examination procedures of the Federal Deposit Insurance Corporation ("FDIC") relieve Defendant of civil liability.  The Court concludes that it does.

The federal government enacted the EFTA as part of the comprehensive Consumer Credit Protection Act (the "CCPA"), Pub.L. No. 95-630 § 2001, 92 Stat. 3641 (1978) (codified as amended at 15 U.S.C. § 1601 *et seq.*).  The EFTA protects individual consumer rights by

4

"provid[ing] a basic framework establishing the rights, liabilities, and responsibilities of

participants in electronic fund transfer systems." 15 U.S.C. § 1693(b).  One of the EFTA's

provisions requires that operators of automated teller machines ("ATMs") provide notice of fees

charged to consumers for use of the machine.  It is this provision, 15 U.S.C. § 1693b(d), under

which Plaintiff's claim is brought.  Specifically, 15 U.S.C. § 1693b(d) requires:

**(3) Fee disclosures at automated teller machines**

**(A) In general**

The regulations prescribed under paragraph (1) shall require any automated teller machine
operator who imposes a fee on any consumer for providing host transfer services to such
consumer to provide notice in accordance with subparagraph (B) to the consumer (at the time
the service is provided) of--

**(i)** the fact that a fee is imposed by such operator for providing the service; and

**(ii)** the amount of any such fee.

**(B) Notice requirements**

**(i) On the machine**

The notice required under clause (i) of subparagraph (A) with respect to any fee
described in such subparagraph shall be posted in a prominent and conspicuous
location on or at the automated teller machine at which the electronic fund transfer
is initiated by the consumer.

**(ii) On the screen**

The notice required under clauses (i) and (ii) of subparagraph (A) with respect to any
fee described in such subparagraph shall appear on the screen of the automated teller
machine, or on a paper notice issued from such machine, after the transaction is
initiated and before the consumer is irrevocably committed to completing the
transaction....

**C) Prohibition on fees not properly disclosed and explicitly assumed by consumer**

No fee may be imposed by any automated teller machine operator in connection with any

5

electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless--

**(i)** the consumer receives such notice in accordance with subparagraph (B); and

**(ii)** the consumer elects to continue in the manner necessary to effect the transaction after receiving such notice.

The EFTA defines an "automated teller machine operator" as a person who operates an ATM and "is not the financial institution that holds the account" of the consumer using that ATM. 15 U.S.C. § 1693b(d)(3)(D)(I).  Accordingly, Defendant is the ATM operator as that term is defined in the EFTA.

Defendant's position rests upon two factual predicates, neither of which are in dispute. The first is that during the course of the alleged ATM transaction and prior to having a transaction fee assessed, notice was provided to Plaintiff on the screen of the ATM that such a fee would be levied and also that the notice provided the actual amount of the fee.  This is the "on the screen" notification required by 15 U.S.C. § 1693b(d)(3)(B)(ii).  The essence of Plaintiff's Complaint is that Defendant failed to provide the "on the machine" notice, as required by 15 U.S.C. § 1693b(d)(3)(B)(i), and that such a failure violates the EFTA because the Defendant was required to provide both  the "on the machine" and the "on the screen" notices. *See generally*, Doc. ## 1, 12.  In other words, Plaintiff has not complained about not receiving the "on the screen" notice, and the Court has no reason to infer that the "on the screen" notice was not provided.  The second factual predicate is that Defendant is an FDIC insured state-chartered savings bank that is not a member bank of the Federal Reserve System.  As such, the analysis begins with the inter-relationship between the Federal Reserve Board, the FDIC, and state-chartered non-Federal Reserve member banks with respect to the notice requirements of the

6

EFTA.

The EFTA grants to the Board of Governors of the Federal Reserve System ("the Board") the authority and responsibility to "prescribe regulations to carry out the purposes" of the Act. 15 U.S.C. § 1693b(a). Accordingly, the Board implemented various administrative regulations codified at 12 C.F.R. § 205 ("Regulation E"). On the issue of ATM notice, Regulation E provides:

(b) *General*. An automated teller machine operator that imposes a fee on a consumer for initiating an electronic fund transfer or a balance inquiry shall:

(1) Provide notice that a fee will be imposed for providing electronic fund transfer services or a balance inquiry; and

(2) Disclose the amount of the fee.

12 C.F.R. § 205.16. To this extent, this general notice provision of Regulation E mirrors the language of the EFTA with respect to the requirement to inform consumers of ATM transaction fees, namely that a fee will be imposed and the amount of the fee when compared with 15 U.S.C. § 1693b(d)(3)(A). There is one term of significance, however, included in Regulation E that is not found in the actual statutory language regarding what an ATM operator must do to comply with the notification requirement. 12 C.F.R. § 205.16(c) requires:

(c) *Notice requirement*. To meet the requirements of paragraph (b) in this section, an automated teller machine operator must comply with the following:

(1) *On the machine*. Post in a prominent and conspicuous location on or at the automated teller machine a notice that:

(i) A fee will be imposed for providing electronic fund transfer services or for a balance inquiry; or

(ii) A fee may be imposed for providing electronic fund transfer services or for a balance inquiry, but the notice in this paragraph (c)(1)(ii) may be substituted for the

7

notice in paragraph (c)(1)(i) only if there are circumstances under which a fee will not be imposed for such services; **and**

(2) *Screen or paper notice.*  Provide the notice required by paragraphs (b)(1) and (b)(2) of this section either by showing it on the screen of the automated teller machine or by providing it on paper, before the consumer is committed to paying a fee.

*Id.* § 205.16(c)(emphasis added).   The inclusion of the word "and" connecting subparagraph (c)(1), the "on the machine" notification requirement, with subparagraph (c)(2), the "screen or paper" notification requirement, makes clear that in order to satisfy the Federal Reserve Board's regulations implementing the EFTA, an ATM operator is required to provide more than one form of notice, namely a posted notice on or at the machine *and* a form of notice on the screen or on paper.  An "on the screen" (or a "screen or paper" notice to use the terminology of Regulation E) alone is not enough.  However, there is no conjunctive term connecting the equivalent language in the EFTA itself.  See, 15 U.S.C. §1693b(d)(3)(B)(i) and (ii).

The EFTA contains express provisions regarding the enforcement of the requirements.  *See* 15 U.S.C. § 1693o.  In particular, the EFTA assigns compliance enforcement to the Board of Directors of the FDIC in the case of a state chartered bank, like Defendant, that is insured by the FDIC but is not a member bank of the Federal Reserve System.  15 U.S.C. § 1693o(1)(C)[1].  To that end, one of the enumerated purposes of the FDIC is to "make examinations of and to require information and reports from depository institutions."  12 U.S.C. §§ 1819 & 1820, *see also*, 12 U.S.C. § 1818(n).

Of particular significance, 12 U.S.C. § 1818(t), defines the authority of the FDIC to take

---

[1]  This is consistent with the provisions of the Federal Deposit Insurance Act itself, which identifies the FDIC as the appropriate Federal Banking agency with oversight of Defendant as a state non-Federal Reserve member insured bank.  12 U.S.C. § 1813(q)(3).

enforcement actions with respect to state non-member banks as the equivalent of the Federal Reserve Board's authority with respect to member banks.[2]  For the purpose of enforcing the EFTA, in other words, what the Federal Reserve Board is to member banks of the Federal Reserve system, the FDIC is to non-member banks like Defendant.  *See also*, 12 C.F.R. Appendix B (indicating that the FDIC is the federal agency responsible for enforcing Regulation E on nonmember insured banks).

FDIC examiners and claims agents, appointed by the FDIC Board of Directors, conduct regular examinations of insured state nonmember banks, and have the authority to, *inter alia*, "administer oaths and affirmations, to take or cause to be taken depositions, and to issue, revoke, quash, or modify subpenas and subpenas duces tecum", while the FDIC itself "is *empowered to make rules and regulations with respect to any such* proceedings, claims, *examinations*, or investigations."  12 U.S.C. § 1818(n)(emphasis added).  As such, the FDIC promulgates a Compliance Examination Handbook that is specifically "designed as a reference tool for Compliance examination staff to use when conducting Compliance and Community Reinvestment Act (CRA) examinations and other supervisory activities."  *See*, Compliance Examination Handbook, p. I-1.1, available online via the FDIC website at

---

[2] 12 U.S.C. § 1818 says in relevant part:
(t) Authority of FDIC to take enforcement action against insured depository institutions and institution-affiliated parties

(4) Corporation's powers; institution's duties
    For purposes of this subsection--

    (A) The Corporation shall have the same powers with respect to any insured depository institution and its affiliates as the appropriate Federal banking agency has with respect to the institution and its affiliates;

http://www.fdic.gov/regulations/compliance/handbook/compmanual.pdf.[3]

Part VI of the Handbook includes a section specifically devoted to compliance with the requirements of the EFTA. *Id.* At pp. VI-2.1 - VI-2.18. This section is organized into subheadings that provide explanations of the requirements corresponding with the section numbers of Regulation E. With respect to compliance with the EFTA regarding notification of ATM transaction fees, the Handbook includes the following guidance:

Disclosures at Automated Teller Machines - §205.16

Section 205.16 requires disclosures at ATMs, before a fee can be charged to the consumer. This applies when a consumer uses an ATM that is operated by a financial institution or other company that does not hold the consumer's account.

In these cases, the operator of the ATM must disclose the fact that a fee will be charged for providing EFT services or a balance inquiry, AND the amount of the fee. The ATM operator may post this information in prominent and conspicuous location on or at the ATM. **Alternatively**, the operator may provide the notice on the ATM screen or on paper, before the consumer is obligated to pay a fee.

An ATM operator may only impose a fee on a consumer initiating an EFT service or balance inquiry if the consumer is provided with the required notices AND elects to continue the transaction after receiving the notice.

Clearly, the inclusion of the word "alternatively" significantly changes the notice requirements with which an ATM operator must comply when compared to the specific language of Regulation E noted above. Instead of clearly requiring both an "on the machine" notice and a "screen or paper notice" consistent with 12 C.F.R. § 205.16, the language of the Handbook gives the ATM operator the choice of either posting the notice that a fee will be charged and the

_____

[3]A non-PDF, electronic version of the Compliance Examination Handbook can also be found online at  http://www.fdic.gov/regulations/compliance/handbook/html/index.html.  For the purpose of this Opinion, however, references to specific content contained within the Handbook are made to the page numbers of the PDF version.

amount of the fee in a prominent or conspicuous location, or in the alternative, providing such notice on the screen or in paper form.

Resolving the disputed facts in favor of the Plaintiff, namely that there was no notification posted at or on the machine at the time of the transaction, and coupling that fact with the undisputed inference that Defendant provided Plaintiff with "on the screen" notification prior to imposing a transaction fee, Defendant has complied with its notification responsibilities as same are explained in the FDIC's own Compliance Examination Handbook.  According to the Handbook, an ATM operator can do one or the other when it comes to providing notice.  For the purpose of this illustration, Defendant chose 'the other'.

Under the EFTA, liability is not imposed in those cases in which a bank has acted in good faith "in conformity with any interpretation ... by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals."  15 U.S.C. § 1693m(d)(1).  In this case, Defendant is entitled to the good faith defense.  Specifically, the Court finds that Defendant's ATM conformed with the Compliance Examination Handbook issued by the FDIC by providing on the screen notice (*see* Handbook at p. VI-2.8), the FDIC has the statutory responsibility to conduct compliance examinations on nonmember banks and to appoint examiners in order to conduct those examinations (12 U.S.C. § 1818(n)), the EFTA specifically delegates enforcement of its provisions with respect to nonmember banks to the FDIC (15 U.S.C. § 1693o), and the Federal Reserve Board itself, through its own implementing regulation, identifies the FDIC as the enforcing agency for nonmember banks (12 C.F.R App. B).  As such, as pled, Plaintiff has failed to state a claim for which relief can be granted.

**CONCLUSION**

For the reasons hereinabove set forth, Defendant's Motion to Dismiss will be granted.

An appropriate Order follows.


BY THE COURT:


s/ Terrence F. McVerry
United States District Court Judge


cc:     R. Bruce Carlson, Esquire
        Email: bcarlson@carlsonlynch.com
        Gary F. Lynch
        Email: glynch@carlsonlynch.com

        Dorothy A. Davis, Esquire
        Email: ddavis@eckertseamans.com
        April M. Hincy, Esquire
        Email: ahincy@eckertseamans.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MATTHEW DRAGOTTA** | ) | |
| **individually and on behalf of all others** | ) | |
| **similarly situated** | ) | **2:09-cv-627** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | |
| **WEST VIEW SAVINGS BANK** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**ORDER OF COURT**</u>

AND NOW, to wit, this 24<u>th</u> day of <u>August</u>, 2009, in accordance with the

foregoing Memorandum Opinion, Defendant's MOTION TO DISMISS is **GRANTED** and

Plaintiff's Complaint, be and same is hereby **DISMISSED.**


BY THE COURT:

<u>s/ Terrence F. McVerry</u>
United States District Court Judge

cc:     R. Bruce Carlson, Esquire
        Email: bcarlson@carlsonlynch.com
        Gary F. Lynch
        Email: glynch@carlsonlynch.com

        Dorothy A. Davis, Esquire
        Email: ddavis@eckertseamans.com
        April M. Hincy, Esquire
        Email: ahincy@eckertseamans.com